

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0546-20

## KEDREEN MARQUE PUGH, Appellant

### v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
## BEXAR COUNTY

KELLER, P.J., delivered the opinion for a unanimous court. WALKER, J., filed a concurring opinion joined by NEWELL, J.

Appellant was arrested pursuant to a warrant. At the time he was arrested, he was the driver and sole occupant of a car registered to his wife. On the way to the police station, he volunteered to an officer that he was going to be "honest" and had "stuff" in the car. When asked what he had in the car, Appellant responded that he had drugs and a handgun. Heroin and a loaded gun were found together in a shopping bag on the front passenger floorboard. Assuming, without deciding, that the police officer's question about what was in the car constituted custodial interrogation and elicited an inadmissible answer, we conclude that any error in admitting this answer was harmless.

# I. BACKGROUND

## A. Facts

A warrant had been issued for Appellant's arrest, and Officer Joe Rios was assigned to pick him up. The officer set up surveillance on Appellant and watched while he drove a Chevy Impala to his house, did some yard work, and left again in the Impala. Officer Rios and others decided to arrest Appellant while he was driving. Appellant was pulled over, arrested pursuant to the warrant, handcuffed, and placed into a marked patrol vehicle. The Impala, which was registered to Appellant's wife, was moved off the roadway and parked at a gas station.

While being transported to the police station, Appellant initiated the following exchange with Officer Lopez:

APPELLANT: Officer?

OFFICER LOPEZ: Yes, sir.

APPELLANT: I'm going to be honest, sir; I got stuff in the car, man.

OFFICER LOPEZ: What do you got in the car?

APPELLANT: I got drugs in the car, and I got a small handgun.

Appellant had not yet been read *Miranda*[1] warnings. Officer Lopez radioed the information received from Appellant to Officer Rios.

Officer Rios searched the Impala and found shopping bags on the front passenger seat and the front passenger floorboard. A black zipper bag and a clear mason jar were in the bag on the floorboard. The zipper bag contained a loaded handgun. The mason jar contained a brown substance, a razor blade, small jewelry bags, and Ziploc bags. In his training and experience, Officer

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Rios recognized the brown substance as heroin.

Mark Florence, a forensic scientist for the Bexar County Crime Lab, analyzed the brown substance. It tested positive for heroin, and it weighed 9.937 grams.

Appellant was charged with possession of heroin with intent to deliver in an amount greater than 4 grams but less than 200 grams. He moved to suppress his statement about the drugs and the handgun. The trial court denied his request. At trial, Rios, Lopez, and Florence testified for the State. The defense put on no witnesses. In closing argument, one of the prosecutors made the following comments regarding whether Appellant knowingly possessed the heroin:

> And this Defendant says, out of the blue -- and you'll hear it. It may have been hard for you to hear on these speakers; but you hear him say clearly -- he says, "I'm going to be honest with you, Officer. I got some stuff in the car, man." And the officer follows up with, "What you got in the car?" And the Defendant says, "I got drugs and I got a small handgun." He knowingly possesses this heroin and this firearm. We know that. We know that from the words from his own mouth.

> * * *

> And the Defendant even follows up, if you continue listening. He follows up and says, "Man, did they find the drugs, did they find" -- what does he say specifically? "Did they find it already?" I mean, he's concerned. He wants that found, it seems like, so his wife doesn't find it.

> * * *

> The other thing, too, for you to consider, who is driving the silver or gray Impala that Officer Rios sees arrive at the location at the residence on Athens Field? Not Megan Pugh, not the wife. This Defendant. He's doing surveillance to arrest him on the warrant, and this Defendant drives up alone in the vehicle. He then does some yard work. He gets in the car to then go to Home Depot to return some blinds; and he's driving the car, too, alone. There's nobody else in the vehicle. So we have connected him by his own words telling the officers that "I've got some drugs in the car and a small handgun." The drugs are found within his reaching in the front passenger area of the car. And you saw the pictures where they're found, okay. And he's the only occupant both times in the vehicle. The wife's in another car, in an Altima at the Home Depot.

The jury found Appellant guilty.

## B. Appeal

The court of appeals concluded that Officer Lopez engaged in custodial interrogation when he asked the question, "What do you got in the car?"[2] The appellate court further concluded that Appellant's answer to the question was inadmissible as a result.[3] The court engaged in a harm analysis as follows:

> In this case, Pugh's statement to Officer Lopez that he had drugs and a handgun in his wife's car led to the search of the car. Other than the expert's testimony identifying the drug recovered as heroin, the only witnesses to testify were Detective Rios and Officer Lopez, and both witnesses testified regarding the statement. Finally, during closing argument, the State repeatedly referred to the statement as evidence establishing Pugh's possession of the heroin. Accordingly, we hold the erroneous admission of Pugh's statement likely was a contributing factor in the jury's deliberations in arriving at a guilty verdict and, therefore, resulted in harm.[4]

## II. ANALYSIS

In two grounds for review, the State takes issue with the court of appeals's error and harm determinations. We find it unnecessary to reach the first issue, regarding error. We address the second ground, regarding harm. The State's second ground for review states: "Even if the answer to the officer's question was inadmissible, the court of appeals erred in factoring admissible evidence, including the defendant's initial volunteered statement and the fruit of the un*Mirandized* statement, into its harm analysis." Under this ground, the State argues, "Because even under the court of appeals's reasoning, the initial statement, the handgun, and the narcotics were still

---

[2] *Pugh v. State*, No. 04-19-00516-CR, 2020 Tex. App. LEXIS 3126, *5 (Tex. App.—San Antonio April 15, 2020) (not designated for publication).

[3] *Id.*

[4] *Id.* at *6-7.

admissible at trial, the court of appeals gave improper weight to the contested statement in concluding that its admission harmed Pugh."

In addressing the issue of harm, we find it necessary to discuss some of the law surrounding *Miranda*. A statement taken in violation of *Miranda* must be suppressed at trial, but other evidence subsequently obtained as a result of that statement need not be suppressed.[5] In particular, a failure to comply with *Miranda* is not a valid basis for suppressing the physical fruits of a custodial statement.[6] And a failure to comply with *Miranda* in an earlier interview does not bar statements in a later interview that complies with *Miranda* unless the police engage in a two-stage interrogation technique calculated to undermine the *Miranda* warning.[7] Finally, volunteered statements are not barred by *Miranda*, even when the accused is in custody.[8]

In assessing harm, the court of appeals found it significant that Appellant's statement about drugs and a handgun led to the search of the car. The court also emphasized the fact that the only witnesses (other than the person who tested the substance) both testified regarding the statement, and that the prosecutor relied on it in argument to show Appellant's possession of the heroin. We

---

[5] *Wells v. State*, 611 S.W.3d 396, 406 (2020).

[6] *Contreras v. State*, 312 S.W.3d 566, 582-83 (Tex. Crim. App. 2010).

[7] *See State v. Castanedanieto*, 607 S.W.3d 315, 328 ("By contrast, a failure to comply with *Miranda* in a prior interview gives rise to no such presumption and ordinarily does not bar statements made in a subsequent interview that does comply with Miranda. The only exception is when the police engage in a two-step interrogation technique "in a calculated way to undermine the Miranda warning.").

[8] *See Arizona v. Mauro*, 481 U.S. 520, 529 (1987) (quoting *Miranda*, 384 U.S. at 478) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); *Jones v. State*, 795 S.W.2d 171, 176 (Tex. Crim. App. 1990) (same). With respect to the observations made *infra*, Article 38.22 provides no greater protection. *See* TEX. CODE CRIM. PROC. art. 38.22, § 5; *Contreras*, 312 S.W.3d at 582-83.

understand the court to mean that the heroin would not have come into evidence absent the statement, and that the remaining testimony almost all included references to the statement. But the first conclusion is incorrect. The heroin would have come into evidence because it was physical evidence not barred by *Miranda*. The heroin was admissible, and so was the analysis that determined that the substance was in fact heroin.

And regardless of the State's reliance on the statement, the jury had other evidence from which to infer Appellant's guilt. His volunteered statement, "I'm going to be honest sir; I got stuff in the car, man," was admissible, and that statement implies guilty knowledge.[9] Even without an explicit reference to drugs, that statement, when combined with the heroin that was found, would have given rise to the obvious conclusion that Appellant knew the heroin was in the car.[10]

It was clear from his volunteered statement that Appellant knew he had something in the car that the police would find of interest. The record suggests only one other item that could have been besides the heroin—the gun. But the gun was in the same shopping bag as the heroin, and it was loaded. And there was other paraphernalia suggesting that the owner of the heroin was also a dealer.

---

[9] *See United States v. Bahadar*, 954 F.2d 821, 831 (2d Cir. 1992) ("Moreover, the evidence showed that Bahadar told Ali to 'look at the stuff and check it as well.' If Bahadar truly did not know that the parking lot transaction was a heroin transaction, why was he so concerned with the contents of the package?").

[10] *See United States v. Butler*, 249 F.3d 1094, 1101 (9th Cir. 2001) (Although custodial statements should have been suppressed, error was harmless beyond a reasonable doubt. The "evidence of guilt was overwhelming," which included the fact that defendant "was the sole occupant of a vehicle carrying over 46 pounds of marijuana" and made the "spontaneous statement" to law enforcement on the way to jail that "I messed up."); *United States v. Son Anh Chu*, 988 F.2d 981, 985 (9th Cir. 1993) (referring to holding in a prior case "that there [was] no reasonable possibility that the verdict would have been different had the allegedly improper instruction not been given" because "the defendant made a statement to the arresting officer that implied he knew he was carrying methamphetamine," the "[d]rugs were found both on his person and in the trunk of the car he was driving," and "[h]e had 'all the tools of the trade' in his possession.").

The obvious and manifest inference to be drawn from these facts was that the gun was being used to protect the heroin[11] and that, if Appellant knew about the gun, then he must also have known about the heroin.[12]

The court of appeals also erred by failing to consider other evidence that tied Appellant to the heroin. He was the driver and sole occupant of the car in which the heroin was found, at the time it was found.[13] And because he had been under surveillance, the jury also knew that he had been the driver and sole occupant of the car for a period of time immediately preceding the police discovery of the heroin.[14] Finally, the heroin was in the front passenger side of the car within the driver's easy reach.

The only evidence that Appellant could point to that might suggest that the heroin belonged

---

[11] *See Plummer v. State*, 410 S.W.3d 855, 859 (Tex. Crim. App. 2013) ("drug dealers frequently use guns to protect themselves and their merchandise"); *Patterson v. State*, 769 S.W.2d 938 (Tex. Crim. App. 1989) (possession of firearm used to protect drugs and facilitate their possession).

[12] *See Son Anh Chu*, 988 F.2d at 985 (referring to the defendant having "all the tools of the trade").

[13] *See Butler*, 249 F.3d at 1101 (vehicle's sole occupant spontaneously admitting, "I messed up").

[14] *See United States v. Gwathney*, 465 F.3d 1133, 1143 (10th Cir. 2006) (upholding use of a permissive instruction that told the jury that it may, but is not required to, draw an inference about the defendant's knowledge of the marijuana stored in his truck based on his operation of the vehicle where the defendant was the sole operator of the commercial trailer containing the drugs, even though he did not load the trailer, where the load was not sealed and he had signed the bill of lading) (characterizing as a "flight of fancy," to think someone at the loading site, or persons unknown, surreptitiously placed the marijuana in the vehicle hoping it would somehow find its way to the right destination 2000 miles away without the knowledge or complicity of the driver). Such a permissive instruction would not be allowed under Texas law, TEX. CODE CRIM. PROC. art. 36.14 (jury instructions must be "not expressing any opinion as to the weight of the evidence"), but the case illustrates the strong inference that the sole operator of a vehicle for an extended period is aware of contraband within his easy reach).

to someone else was the fact that the car was not registered in his name, but that evidence was wholly insubstantial because it was registered to his wife. That he would use a car registered to his wife for his own personal purposes would come as a surprise to no one.[15] And the drugs and gun aside, the evidence showed that Appellant used the car in just such a manner. Aside from the registration, there was no evidence connecting the wife and the heroin at all, much less to the exclusion of Appellant.

This is a case in which the defendant was caught red-handed with the drugs and had no realistic defense. He was the driver and sole occupant of a vehicle containing contraband within easy reach. His use of the car and his volunteered statement both strongly reinforced the conclusion that the heroin that was found belonged to him. And in light of the other evidence in this case, the car being registered to his wife was really another factor against him, not in his favor. We conclude that the court of appeals's harm analysis was unsound and that its finding of harm was in error.

We reverse the judgment of the court of appeals, and remand the case to it for consideration of Appellant's remaining issue.

Delivered: June 9, 2021

Publish

---

[15] *See United States v. Jones*, 565 U.S. 400, 402 (2012) (attachment of electronic tracking device installed Jeep Grand Cherokee registered to the defendant's wife held to be a "search" under the Fourth Amendment); *United States v. Jenkins*, 501 Fed. Appx. 685, 687 (9th Cir. 2012) (car containing drugs was registered to defendant's wife).